# THE SUPREME COURT, STATE OF WYOMING

# 2026 WY 86

APRIL TERM, A.D. 2026

July 30, 2026

WILLIAM JOHN DUNCAN,

**Appellant**
**(Defendant),**

v.

S-25-0236

THE STATE OF WYOMING,

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Sweetwater County*
*The Honorable Suzannah G. Robinson, Judge*

*Representing Appellant:*

> *Office of Public Defender: Patricia L. Bennett, State Public Defender;\* Kirk A. Morgan, Chief Appellate Counsel; Sean H. Barrett, Senior Assistant Appellate Counsel. Argument by Mr. Barrett.*

*Representing Appellee:*

> *Keith G. Kautz, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Donovan Burton, Assistant Attorney General. Argument by Mr. Burton.*

> *\*An Order Substituting Patricia L. Bennett for Brandon Booth was entered on July 16, 2026.*

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]   A jury convicted William J. Duncan of six counts of sexual exploitation of a child, one count of endangering a child, and one count of unlawful contact.  The district court sentenced Mr. Duncan to an aggregate term of 21 to 30 years in prison for the sexual exploitation convictions, followed by five years of supervised probation.  The district court sentenced Mr. Duncan to 180-day jail sentences for the endangering a child and unlawful contact convictions, with those sentences to run concurrently with each other but consecutively to the sentences imposed for the sexual exploitation convictions.  On appeal, Mr. Duncan challenges the sufficiency of the evidence supporting three of the six sexual exploitation convictions in violation of Wyoming Statute § 6-4-303(b)(ii) (2021).   He argues digital penetration and penetration with a sexual device do not constitute "explicit sexual conduct" as defined under Wyoming Statute § 6-4-303(a)(iii) (2021).  Alternatively, if that conduct falls within the statute, he contends the jury may have returned a nonunanimous verdict or improperly convicted him multiple times for the same underlying conduct.  He also argues on one of the six counts the State failed to prove he "enticed" the minor child to engage in "explicit sexual conduct."   Finally, he asserts his aggregate sentence constitutes cruel punishment in violation of Article 1, Section 14 of the Wyoming Constitution.  We affirm.

## ISSUES

[¶2]   Mr. Duncan presents two issues on appeal, which we rephrase and restate as the following three issues:

> I.   Did the State present sufficient evidence at trial to support Mr. Duncan's convictions on Counts II, III, and V for sexual exploitation of a child?
>
> II.   If his convictions on Counts II and V are supported by sufficient evidence, did the district court commit plain error by failing to adequately instruct the jury they needed to unanimously agree which specific conduct formed the basis for each count?
>
> III.   Does Mr. Duncan's sentence constitute cruel punishment in violation of Article 1, Section 14 of the Wyoming Constitution?

## FACTS

[¶3]   Mr. Duncan's crimes involved four minor children, his stepdaughter/adopted

1

daughter[1] (Minor Child), two of the Minor Child's friends (Friend #1 and Friend #2), and Mr. Duncan's son (Stepbrother). When the Minor Child was approximately eight years old, her mother met Mr. Duncan. The two later married and, together with their children, they moved into Mr. Duncan's home. When Mr. Duncan entered the Minor Child's life, she had a strained relationship with her biological father. Mr. Duncan assumed a parental role by, in the Minor Child's words, "stepp[ing] up and t[aking] care of [her]."

[¶4]    When the Minor Child was 12 years old, Mr. Duncan started to have sexual conversations with the Minor Child. In some of these conversations, Mr. Duncan asked the Minor Child to engage in sexual conduct with Friend #1 and Friend #2, while they were sleeping over at the home shared by the Minor Child and Mr. Duncan. Mr. Duncan would send the Minor Child text messages telling her to perform sexual acts on Friend #1, which included asking the Minor Child to use sexual devices on Friend #1, which Mr. Duncan had purchased for the Minor Child. On another occasion, Mr. Duncan sent the Minor Child a link to a pornographic video depicting three individuals engaged in sexual activity and asked the Minor Child to engage in the same conduct with Friend #1 and Friend #2, both of whom were 12 years old at the time. The Minor Child, Friend #1, and Friend #2 complied with Mr. Duncan's request and engaged in the conduct for a brief period.

[¶5]    In addition to encouraging the Minor Child to engage in sexual acts with her friends, Mr. Duncan encouraged the Minor Child to engage in sexual conduct with his son, the Minor Child's Stepbrother. The Minor Child began having sexual relations with her Stepbrother when she was 12 years old and her Stepbrother was 14 years old, which was also around the same time Mr. Duncan was encouraging her to engage in sexual activity with Friend #1 and Friend #2. The Minor Child's sexual relationship with her Stepbrother continued from July 2022 until August 2024. In August 2024, when the Minor Child was 14 years old and her Stepbrother was 17 years old, the Stepbrother ended the sexual relationship with the Minor Child when Mr. Duncan adopted the Minor Child, because the Stepbrother was no longer comfortable continuing with the relationship. Around this same time, Mr. Duncan text messaged the Minor Child and told her to: "Go lay on [your Stepbrother's] bed and play with your p[****]." Mr. Duncan told the Minor Child if she did what he asked, her Stepbrother would not be able to tell her no.

[¶6]    In October 2024, law enforcement received an anonymous report concerning the Minor Child having sexual relations with her Stepbrother. A detective met with the Minor Child's mother and requested performing a forensic interview of the Minor Child. However, the mother declined and stated the matter would be addressed at home. The Minor Child later told her mother she had been having sexual relations with her Stepbrother, and Mr. Duncan had been encouraging the behavior.

---

[1] At the outset of the period of the charged conduct, the Minor Child was Mr. Duncan's stepdaughter. However, Mr. Duncan adopted the Minor Child in July 2024, approximately eight months before the State charged him.

2

[¶7]   At some point, Mr. Duncan messaged the Minor Child and instructed her to "go in and permanently delete all [of her] deleted messages." He further told her that he needed to know exactly what the Minor Child had said because what she's "done . . . could destroy [their] family, businesses and way of life." The Minor Child's mother later confronted Mr. Duncan with the Minor Child present. During the confrontation, Mr. Duncan yelled at the Minor Child and told her to "keep [her] mouth shut . . . and if [she] keep[s] [her] mouth shut, nothing bad would happen and [she] just need[ed] to stop talking." He then placed his hand over the Minor Child's mouth, so the Minor Child bit his hand, pulled away, and left the vicinity.

[¶8]   On January 20, 2025, law enforcement responded to a report of a domestic dispute at a counseling office and was directed to a back room, where officers contacted the Minor Child. Detectives conducted a forensic interview of the Minor Child and completed a forensic download of her phone. Following an investigation, Mr. Duncan was charged with six counts of sexual exploitation of a child in violation of Wyoming Statute § 6-4-303(b)(ii), two counts of endangering children in violation of Wyoming Statute § 6-4-403(b)(i) (2021), and one count of unlawful contact without bodily injury in violation of Wyoming Statute § 6-2-501(g)(i) (2021). The State subsequently moved to amend the information by dismissing one of the endangering children counts.

[¶9]   A three-day jury trial commenced on July 7, 2025. The jury found Mr. Duncan guilty of all counts. The district court sentenced Mr. Duncan to 180 days in jail on the endangering a child count (Count VII) and the unlawful contact without bodily injury count (Count VIII), with those sentences to run concurrently. The district court also awarded 144 days of credit for presentence confinement. For the six exploitation of a child convictions (Counts I through VI), the district court imposed sentences of not less than seven nor more than ten years in prison on each count, with one count suspended in lieu of five years of supervised probation. All six exploitation convictions were ordered to run consecutively to the sentences for endangering a child, Count VII, and unlawful contact without bodily injury, Count VIII. Because the offenses involved four separate minor children, the district court structured the sentences for the six sexual exploitation convictions by imposing one sentence for each child: three consecutive prison terms of seven to ten years and a fourth sentence of seven to ten years, which the court suspended in favor of five years of supervised probation. In the aggregate, Mr. Duncan received a total term of incarceration of 21 to 30 years, followed by five years of supervised probation, for all six of his sexual exploitation convictions. Mr. Duncan timely appealed.

**STANDARD OF REVIEW**

[¶10] Mr. Duncan argues the State failed to present sufficient evidence to support his convictions of sexual exploitation of a child in violation of Wyoming Statute § 6-4-303(b)(ii) for Counts II, III, and V.

3

In reviewing for sufficiency of the evidence, we must decide whether the evidence could reasonably support the jury's verdict. We do not reweigh the evidence or reexamine the credibility of the witnesses. Instead, we examine the evidence in the light most favorable to the State. We accept all evidence favorable to the State as true and give the State's evidence every favorable inference which can reasonably and fairly be drawn from it. We disregard any evidence favorable to the appellant that conflicts with the State's evidence.

*Wilson v. State*, 2024 WY 34, ¶ 3, 545 P.3d 435, 436–37 (Wyo. 2024) (citation modified).

[¶11] In an alternative argument, Mr. Duncan claims the jury may have returned a nonunanimous verdict or improperly convicted him multiple times for the same underlying conduct in Counts II and V. We review this argument for plain error, because Mr. Duncan's counsel did not object to the jury instructions, which differentiated between the underlying conduct involved for each count. *Townsend v. State*, 2025 WY 108, ¶ 15, 576 P.3d 1254, 1259 (Wyo. 2025) ("When a party does not object to a jury instruction at trial, we review that instruction for plain error.") (citing *Walker v. State*, 2022 WY 158, ¶ 17, 521 P.3d 967, 976 (Wyo. 2022)).

[¶12] Mr. Duncan also challenges the constitutionality of his sentence, which is a question of law. *See Castaner v. State*, 2026 WY 25, ¶ 15, 584 P.3d 454, 461 (Wyo. 2026); *Martinson v. State*, 2023 WY 88, ¶ 14, 534 P.3d 913, 917 (Wyo. 2023). Issues involving the constitutionality of a sentence "are reviewed 'under a de novo standard of review and we afford no deference to the district court's determinations on the issues.'" *Castaner*, ¶ 15, 584 P.3d at 461 (quoting *Bear Cloud v. State*, 2014 WY 113, ¶ 13, 334 P.3d 132, 137 (Wyo. 2014)).

## DISCUSSION

[¶13] Mr. Duncan challenges the sufficiency of the evidence supporting his convictions for sexual exploitation of a child as charged in Counts II, III, and V of the amended information. With respect to Counts II and V, he contends the jury may have returned a nonunanimous verdict based on the same underlying conduct. Lastly, he argues his aggregate sentence on the six child exploitation convictions constitutes cruel punishment in violation of Article 1, Section 14 of the Wyoming Constitution. We address each argument in turn.

   I.   *Sufficient evidence supported Mr. Duncan's convictions for sexual exploitation of a child for Counts II, III, and V under Wyoming Statute § 6-4-303(b)(ii).*

[¶14] Mr. Duncan was convicted of six counts of sexual exploitation of a child (Counts I through VI) in violation of Wyoming Statute § 6-4-303(b)(ii). Pursuant to Wyoming Statute § 6-4-303(b)(ii):

> (b) A person is guilty of sexual exploitation of a child if, for any purpose, he knowingly:
>
> * * *
>
> (ii) Causes, induces, entices or coerces a child to engage in, or be used for, any explicit sexual conduct;

[¶15] First, Mr. Duncan argues there is insufficient evidence to support his convictions for Counts II and V because the conduct he encouraged does not constitute "explicit sexual conduct" as defined under Wyoming Statute § 6-4-303(a)(iii). Second, he challenges the sufficiency of the evidence supporting Count III, involving the Minor Child's Stepbrother, arguing he did not "entice" the Minor Child to engage in explicit sexual conduct but instead encouraged her to be open and honest with him about the Minor Child's relationship with her Stepbrother.

### A. Mr. Duncan's conduct of encouraging the Minor Child to digitally penetrate and use sexual devices on Friend #1 constitutes "explicit sexual conduct," and the convictions on Counts II and V were supported by sufficient evidence.

[¶16] For Counts II and V, Mr. Duncan was charged with sexual exploitation of a minor based on conduct involving digital penetration and penetration using a sexual device. For Count II, the jury was instructed Mr. Duncan was charged with: "Knowingly; Entic[ing] a child, [Minor Child]; To engage in; Any explicit sexual conduct, namely digital penetration of [Friend #1]." For Count V, the jury was instructed Mr. Duncan was charged with: "Knowingly; Entic[ing] a child, [Minor Child]; To engage in; Any explicit sexual conduct, namely penetration with sexual devices of [Friend #1]." Mr. Duncan argues Counts II and V, as charged and presented to the jury, do not fall within the offense of sexual exploitation of a child because digital penetration and penetration using a sexual device do not constitute "explicit sexual conduct" as defined by Wyoming Statute § 6-4-303(a)(iii). He asserts that, because the charged conduct falls outside the statutory definition of "explicit sexual conduct," the jury could not reasonably have found the evidence sufficient to support his convictions on Counts II and V. The State argues the jury could have reasonably found Mr. Duncan guilty of sexual exploitation of a child as charged in Counts II and V because the conduct underlying those convictions constitutes masturbation, which is expressly included as a form of "explicit sexual conduct" under the statute. We agree with the State.

5

[¶17]  Wyoming Statute § 6-4-303(a)(iii) defines explicit sexual conduct as: "actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital or oral-anal, between persons of the same or opposite sex, bestiality, **masturbation**, sadistic or masochistic abuse or lascivious exhibition of the genitals or pubic area of any person[.]" Wyo. Stat. Ann. § 6-4-303(a)(iii) (emphasis added).  The word masturbation is not defined under Wyoming Statute § 6-4-303.  When a criminal statute does not define a term, we presume the legislature did not mean for the term to have a specialized meaning, and we apply its common definition. *Schuerman v. State*, 2022 WY 160, ¶ 15, 522 P.3d 145, 149 (Wyo. 2022) (citing *Bernal-Molina v. State*, 2021 WY 90, ¶ 17, 492 P.3d 904, 909; *Marfil v. State*, 2016 WY 12, ¶ 25, 366 P.3d 969, 975–76 (Wyo. 2016)).  The American Heritage Dictionary defines "masturbation" as: "[e]xcitation of one's own or another's genital organs, usually to orgasm, by manual contact or means other than sexual intercourse." *Masturbation*, The American Heritage Dictionary of the English Language (5th ed. 2022), https://www.ahdictionary.com/word/search.html?q=masturbation (last visited June 19, 2026).  Similarly, Merriam-Webster defines "masturbation" as: "erotic stimulation especially of one's own genital organs . . . by manual or other bodily contact exclusive of sexual intercourse, **by instrumental manipulation** . . . or by various combinations of these agencies." *Masturbation*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/masturbation (last visited June 19, 2026) (emphasis added).

[¶18]  Applying these common definitions of masturbation to the crime of sexual exploitation of a child, Mr. Duncan, for any purpose, must have enticed the Minor Child to engage in exciting Friend #1's genital organs by manual contact, instrumental manipulation, or means other than sexual intercourse.  This includes enticing the Minor Child to engage in conduct such as digital penetration or the use of a sexual device on Friend #1's genital organs.  The Minor Child testified that when she was approximately 12 years old Mr. Duncan discussed with her how to engage in sexual activity with Friend #1.  She testified Mr. Duncan would message her about putting her fingers inside of Friend #1's vagina or "[p]utting [her] mouth and face in" the area of Friend #1's vagina.  She further stated Mr. Duncan sent her text messages about using sexual devices on Friend #1, which the Minor Child stated meant using a piece of silicone and "putting [it] inside of [Friend #1]."

[¶19]  Friend #1 testified Mr. Duncan "would ask [the Minor Child and Friend #1] to do sexual things with each other."  She stated during sleepovers at the Minor Child's house, Mr. Duncan would text the Minor Child telling her how to engage in sexual contact with Friend #1.  Friend #1 stated the Minor Child would show her the messages, and the two girls would often do what Mr. Duncan requested.  She testified to seeing a message Mr. Duncan sent to the Minor Child asking her "to use toys on [Friend #1] that [Mr. Duncan] had bought for" the Minor Child.  In a recovered text message conversation, Mr. Duncan discussed with the Minor Child her first sexual experience with Friend #1.  Mr. Duncan discussed the Minor Child having "magic fingers" and stated the Minor Child "must be practicing more."  The Minor Child testified she understood Mr. Duncan's messages about

6

"magic fingers" to mean he was referring to the way she "put[] [her] fingers inside of [Friend #1's] vagina."

[¶20] Viewing the above evidence in the light most favorable to the State and disregarding any evidence favorable to Mr. Duncan, there is sufficient evidence supporting Mr. Duncan, for any purpose, enticed the Minor Child to engage in "explicit sexual conduct" by enticing the Minor Child to engage in the act of masturbation on Friend #1 through digital penetration and the use of sexual devices. A jury could reasonably conclude Mr. Duncan committed sexual exploitation of a child as charged in Counts II and V.

> **B. The evidence was sufficient to support Mr. Duncan's conviction on Count III for enticing the Minor Child to engage in sexual intercourse with her Stepbrother.**

[¶21] In his next sufficiency of the evidence argument, Mr. Duncan challenges his conviction for sexual exploitation of a child as charged in Count III. He argues the evidence was insufficient to establish he "enticed" the Minor Child to engage in sexual intercourse with her Stepbrother. He asserts his conduct did not meet the statutory definition of "entice" because he was merely encouraging the Minor Child to be open and honest with him about her relationship with her Stepbrother.

[¶22] As discussed above, "[a] person is guilty of sexual exploitation of a child if, for any purpose, he knowingly . . . "[c]auses, induces, entices or coerces a child to engage in, or be used for, any explicit sexual conduct[.]" Wyo. Stat. Ann. § 6-4-303(b)(ii). For Count III, the jury was instructed; "On or about the 1st day of July, 2022; . . . ; The Defendant, WILLIAM JOHN DUNCAN; For any purpose; Knowingly; **Enticed a child**, [Minor Child]; To engage in; Any explicit sexual conduct, namely sexual intercourse with [her Stepbrother]." (emphasis added). Because Wyoming Statute § 6-4-303 does not define the word "entice," we apply the ordinary dictionary definition of "entice." *See Schuerman*, 2022 WY 160, ¶ 15, 522 P.3d at 149. Black's Law Dictionary defines "entice" as "[t]o lure or induce; esp., to wrongfully solicit (a person) to do something." *Entice*, *Black's Law Dictionary* (West 12th ed. 2024); *see also Blakeman v. State*, 2004 WY 139, ¶ 18–22, 100 P.3d 1229, 1235 (Wyo. 2004) (defining "solicit" as "to tempt or to entice someone to do wrong"). The American Heritage dictionary defines entice: "To attract (someone), usually to do something, by arousing hope, interest, or desire[.]" *Entice*, The American Heritage Dictionary of the English Language (5th ed. 2022), https://www.ahdictionary.com/word/search.html?q=entice (last visited June 23, 2026).

[¶23] On the morning of July 1, 2022, Mr. Duncan exchanged text messages with the Minor Child after she had fallen asleep the previous night in the bedroom of her 14-year-old Stepbrother. At the time, the Minor Child was 12 years old. The text messages were as follows:

7

Mr. Duncan: Hello

Mr. Duncan: I need to know what happened last night. I'm not here to judge but I need you to be 100% honest with me.

Minor Child: I promise nothing happened

Mr. Duncan: [Minor Child], listen, mom says you were being a little shady, running back upstairs to talk with [Stepbrother]. It sure appears like something happened. Why was the door locked?

Minor Child: The door was being wierd [sic] I tried to get water last night and I couldn't get the sore [sic] open

Mr. Duncan: Like I said, I'm not here to judge or punish. But I need the truth. You were honest with me about [Friend #1].

Minor Child: I know but nothing happened

Mr. Duncan: Ok. So, if that is the answer and I find out differently later, they [sic] way that you and I communicate and trust is going to be a lot different.

Minor Child: I know

Mr. Duncan: Ok. I will believe you and I will go to bat for you with mom. Don't make me look foolish later.

Minor Child: I won't. I promise

Mr. Duncan: By that I mean, finding out something did happen. Like I told mom, I wouldn't even blame you two. You're both good looking kids and horny as hell and not blood related. Seems too easy. Just don't make me look stupid later. I'm going to tell her nothing happened. I am trusting you.

Minor Child: Ok

> Minor Child: I promise nothing did
>
> Mr. Duncan: Ok. No more sleeping in boys rooms.
>
> Minor Child: I know I fell asleep in the chair

A couple weeks after the Minor Child fell asleep in her Stepbrother's room, the Minor Child and her Stepbrother began engaging in sexual conduct. The Minor Child testified she told Mr. Duncan about the sexual relationship with her Stepbrother and Mr. Duncan encouraged that relationship.

[¶24] The Minor Child testified she and Mr. Duncan had conversations that were sexual in nature via text message and in person. Around the same time as the above text message conversation occurred, Mr. Duncan was text messaging the Minor Child about performing digital penetration on Friend #1 and asking the Minor Child to engage in sexual conduct with Friend #1 and Friend #2, including by using sexual devices Mr. Duncan had purchased for the Minor Child. When the Minor Child was 14 and her Stepbrother was 17, their sexual relationship ended because her Stepbrother became uncomfortable after Mr. Duncan adopted the Minor Child. Around the same time, Mr. Duncan text messaged the Minor Child stating: "Go lay on [your Stepbrother's] bed and play with your p[****] and he won't be able to say no to you."

[¶25] Our standard of review requires us to look at the evidence in the light most favorable to the State and give every favorable inference to the State's evidence. *Wilson*, 2024 WY 34, ¶¶ 3, 18, 545 P.3d at 436–37, 439. Under that standard, the jury could reasonably infer Mr. Duncan enticed the Minor Child to engage in sexual intercourse with her Stepbrother because he lured, induced, attracted, or aroused the Minor Child's interest or desire in, engaging in sexual intercourse with her Stepbrother. The evidence shows Mr. Duncan encouraged the Minor Child to engage in sexual conduct, including with her Stepbrother, and even at one point told the Minor Child to go lie on her Stepbrother's bed and perform sexual acts. There was sufficient evidence at trial to support Mr. Duncan's conviction for sexual exploitation of a child as charged in Count III.

> ## II. Mr. Duncan has not shown the district court committed plain error by failing to adequately instruct the jury that it was required to unanimously agree on the specific conduct forming the basis for Counts II and V, which involved the Minor Child and Friend #1.

[¶26] Although not set out as a separate issue in his brief, during his discussion of the sufficiency of the evidence, Mr. Duncan raised an issue regarding the sufficiency of the jury instructions. Mr. Duncan contends that if his convictions on Counts II and V are supported by sufficient evidence because digital penetration and penetration using a sexual device are "explicit sexual conduct," then the jury may have returned a nonunanimous

9

verdict or improperly convicted him multiple times for the same underlying conduct in the sexual exploitation charges involving the Minor Child and Friend #1.

[¶27] Mr. Duncan did not object to the jury instructions at trial and affirmatively agreed to the jury instructions and the way they distinguished the conduct underlying each count. Therefore, our review is for plain error. *See Townsend*, 2025 WY 108, ¶ 15, 576 P.3d at 1259 ("When a party does not object to a jury instruction at trial, we review that instruction for plain error.") (citing *Walker*, 2022 WY 158, ¶ 17, 521 P.3d at 976). "To establish plain error, [Mr. Duncan] must establish first, the record clearly presents the incident alleged to be error; second, a clear and unequivocal rule of law was violated in a clear and obvious, not merely arguable, way; and third, he was denied a substantial right resulting in material prejudice against him." *Id.* (citation modified).

[¶28] The first prong of the plain error test is met because the challenged jury instructions appear in the record. However, Mr. Duncan cannot satisfy the second prong of the plain error test because he failed to show the district court violated a clear and unequivocal rule of law. The record reflects the jury instructions distinguished between each count and the separate conduct underlying each charge. During an informal jury instruction conference, the State requested to modify all the element instructions for the sexual exploitation charges to include the names of the children involved and to specify the conduct charged in each count. At the formal jury instruction conference, defense counsel expressly agreed to the instruction for Count II, stating he had no objection and in fact "request[ed] it as well." Similarly, the district court modified the instructions for the remaining sexual exploitation charges to identify the specific child involved and the conduct alleged in each count. Defense counsel did not object to any of the instructions as modified and further requested the jury be instructed that "each count [is] to be considered separately."

[¶29] Consistent with defense counsel's request, the jury was instructed that "[e]ach count, and the evidence pertaining to it, should be considered separately[.]" With respect to Count II, the jury was instructed the elements as charged were: "On or about the 10th day of June, 2022; . . . ; The Defendant, WILLIAM JOHN DUNCAN; For any purpose; Knowingly; Enticed a child, [the Minor Child]; To engage in; Any explicit sexual conduct, namely digital penetration of [Friend #1]." Although Mr. Duncan does not contest Count IV, he was also charged with sexual exploitation involving the Minor Child and Friend #1 in Count IV. For Count IV, the jury was instructed the elements of that charge involved: "sexual intercourse with [Friend #1]" on or between August 1, 2020, and December 31, 2022. For Count V, the jury was instructed the elements as charged involved "namely penetration with sexual devices of [Friend #1]."

[¶30] During closing argument, the State distinguished each count and identified the specific conduct supporting each charge. For Count II, the State pointed to Exhibit 1a, in which Mr. Duncan referenced the Minor Child using "magic fingers" on Friend #1, and the Minor Child testified the term referred to digital penetration. The State argued Count II

involved Mr. Duncan enticing the Minor Child to digitally penetrate Friend #1. The State contended Count IV was based on messages Mr. Duncan sent to the Minor Child telling her to perform oral sex on Friend #1. Finally, regarding Count V, the State argued this count was based on a message Friend #1 observed on the Minor Child's phone where Mr. Duncan directed the Minor Child to use a sexual device he purchased on Friend #1.

[¶31] A review of the jury instructions show they were carefully tailored to distinguish the conduct underlying each count, identified the specific conduct associated with each charge, and directed the jury to consider each count separately. The State's closing argument also identified the conduct supporting each count, consistent with the jury instructions, further ensuring the jury understood which alleged act corresponded to each count. Under these circumstances, Mr. Duncan cannot establish there is a reasonable probability the jury did not unanimously agree on each of these counts. *Townsend*, 2025 WY 108, ¶¶ 24–25, 576 P.3d at 1261 (holding the appellant could not establish plain error when the jury instructions differentiated the charged conduct by separately identifying the acts underlying two of the three counts and directed the jury to consider each count independently); *Cf. Walker*, 2022 WY 158, ¶¶ 54, 67, 521 P.3d at 985–87 (finding the lack of distinguishing language in the jury instructions combined with "facts supporting [two of three identical counts] and the closing argument [did] nothing to clarify these counts for the jury[,]" created "a reasonable probability that the jury did not reach unanimity" on those counts). We therefore find Mr. Duncan cannot establish plain error. *See Townsend*, 2025 WY 108, ¶¶ 24–25, 576 P.3d at 1261.

### III. Mr. Duncan's sentence does not constitute cruel punishment in violation of Article 1, Section 14 of the Wyoming Constitution.

[¶32] In Mr. Duncan's last argument, he challenges the sentences imposed with respect to the six counts of sexual exploitation of a child and does not contest the sentences he received for Count VII, endangering children, and Count VIII, unlawful contact without bodily injury. Mr. Duncan argues his aggregate sentence of 21 to 30 years in prison followed by a probationary term of five years for the six sexual exploitation convictions is grossly disproportionate to the gravity of his crimes. He argues his sentence constitutes a cruel punishment under Article 1, Section 14 of the Wyoming Constitution.

[¶33] The prohibition against cruel or unusual punishment under Article 1, Section 14 of the Wyoming Constitution "prohibits punishment that is grossly disproportional to the gravity of the crime." *Martinson*, 2023 WY 88, ¶¶ 29–30, 534 P.3d at 921. To determine whether a punishment is cruel under Article 1, Section 14, we look to whether the "punishment is so grossly disproportionate to the offense that it shocks the moral sense of the people." *Hicks v. State*, 2025 WY 113, ¶¶ 116–117, 578 P.3d 366, 396–97 (Wyo. 2025). First, this Court determines if the punishment is grossly disproportionate to the offense by "consider[ing] the gravity of the offense to the harshness of the penalty." *Id.* In doing so, this Court looks at the offender's actual criminal conduct. *Id.*; *see also Martinson*, 2023

11

WY 88, ¶¶ 32–33, 534 P.3d at 921–22. Only if we determine the punishment is grossly disproportionate to the crime will we determine whether the punishment shocks the moral sense of the people by considering "the sentences imposed on similarly situated defendants in this and other jurisdictions[.]" *Hicks*, ¶ 117, 578 P.3d at 397; *Martinson*, ¶ 30, 534 P.3d at 921.

[¶34] For the six convictions of sexual exploitation of a child, Mr. Duncan faced a maximum term of imprisonment of not less than 30 years nor more than 72 years. *See* Wyo. Stat. Ann. § 6-4-303(c) ("The sexual exploitation of a child pursuant to paragraphs (b)(i) through (iii) of this section is a felony punishable by imprisonment for not less than five (5) years nor more than twelve (12) years, a fine of not more than ten thousand dollars ($10,000.00), or both."). When imposing its sentence, the district court noted there were four children involved, and it was ordering a separate sentence for each of the four children, which it did by ordering three consecutive sentences of seven to ten years, and one sentence of seven to ten years suspended in lieu of five years of supervised probation. The district court noted Mr. Duncan took the Minor Child's "desire to have a father figure and . . . twisted it and manipulated it over the course of years [and] normalized the behavior[.]" It stated Mr. Duncan was "very clearly encouraging [his] stepdaughter [(the Minor Child)] to have sexual discussions with [him] and then to act on them with children, children that [Mr. Duncan] had no close relationship with" as well as with the Minor Child's Stepbrother.

[¶35] The evidence in the record supports the district court's conclusions. When the Minor Child was 12 years old Mr. Duncan asked the Minor Child to engage in sexual conduct, including telling the Minor Child to use sexual devices on Friend #1 that Mr. Duncan had purchased for the Minor Child. Mr. Duncan also sent pornographic videos to the Minor Child. On one occasion when the Minor Child was 12 years old, Mr. Duncan sent the Minor Child a link to a pornographic video showing three people engaged in sexual activity and asked her to do what was in the video with Friend #1 and Friend #2, both of whom were 12 years old. The Minor Child, Friend #1, and Friend #2 engaged in the sexual conduct Mr. Duncan requested for a brief period. In addition to encouraging sexual conduct between the Minor Child and her two friends, Mr. Duncan encouraged the Minor Child to engage in sexual conduct with her Stepbrother, when the Stepbrother was 14 years old and the Minor Child was 12 years old. At one point, when the Stepbrother no longer wanted to engage in sexual conduct with the Minor Child because Mr. Duncan had adopted the Minor Child, Mr. Duncan text messaged the Minor Child stating "Go lay on [your Stepbrother's] bed and play with your p[****] and he won't be able to say no to you." At this point the Minor Child was 14 years old and her Stepbrother was 17 years old.

[¶36] The text messages introduced at trial and during the sentencing hearing show Mr. Duncan initiated sexual conversations with the Minor Child, including discussing the Minor Child digitally penetrating her friend; implying the Minor Child should kiss her friend; telling the Minor Child about sexual devices; teaching the Minor Child about sexual

activity; as well as telling the Minor Child to go knock on her Stepbrother's door, "flash him and run away" and telling her "[t]his is part of being a beautiful woman. You get to have fun with the men that admire you." Mr. Duncan also told the Minor Child to delete her messages and to make sure they were permanently deleted. The Minor Child testified that she deleted all the sexual messages because she "knew that [she] was supposed to delete everything so [Mr. Duncan] didn't get in trouble" and her mother would not divorce Mr. Duncan. The detective who performed a forensic download of the Minor Child's phone testified the messages recovered from the phone indicate messages from Mr. Duncan to the Minor Child were deleted from the phone.

[¶37] Mr. Duncan's conduct in sexually exploiting the Minor Child caused sexual activity to occur between the Minor Child and three other minor children. We find no error in the district court's decision to impose consecutive sentences for each of the four children affected by Mr. Duncan's conduct. The aggregate sentence of 21 to 30 years imprisonment, followed by a five-year term of supervised probation, is not grossly disproportionate to the gravity of Mr. Duncan's criminal conduct, particularly given he could have been sentenced to between 30 years and 72 years in prison for his convictions. We therefore do not need to consider whether Mr. Duncan's sentence shocks the moral sense of the people, and we decline his invitation to compare his sentence to those in other criminal cases.

## CONCLUSION

[¶38] Mr. Duncan's conduct in encouraging the Minor Child to digitally penetrate and use sexual devices on another child, Friend #1, falls within the statutory definition of "explicit sexual conduct." Mr. Duncan's convictions for Counts II, III, and V are supported by sufficient evidence. Mr. Duncan cannot establish the district court committed plain error because the jury was adequately instructed on the separate conduct underlying each count. Mr. Duncan's sentence for all six of his convictions of sexual exploitation of a child is not grossly disproportionate to his conduct and did not amount to cruel punishment in violation of Article 1, Section 14 of the Wyoming Constitution. Affirmed.

13